IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SONYA HOOKER, SYBIL RUMMAGE, | ) | |
| DONNA DEAL, KENNETH MICHAEL | ) | |
| DEAL, and BETTY DEAL, | ) | |
| individually and on behalf of | ) | |
| a class of those similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:21-cv-00384 |
| | ) | |
| THE CITADEL SALISBURY LLC, | ) | |
| SALISBURY TWO NC PROPCO LLC, | ) | |
| ACCORDIUS HEALTH LLC, THE | ) | |
| PORTOPICCOLO GROUP, LLC, | ) | |
| SIMCHA HYMAN, and NAFTALI | ) | |
| ZANZIPER, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This class action lawsuit seeks economic and emotional distress damages arising out of alleged nursing home understaffing prior to and through the COVID-19 pandemic. Plaintiffs are residents of The Citadel Salisbury nursing home: Sybil Rummage, along with her sponsor, Sonya Hooker; and Betty Deal, along with her sponsors Donna Deal and Kenneth Michael Deal. Defendants, The Citadel Salisbury, LLC ("The Citadel"); Salisbury Two NC Propco, LLC; Accordius Health, LLC ("Accordius"); The Portopiccolo Group, LLC ("Portopiccolo"); Simcha Hyman; and Naftali Zanziper, move to dismiss (Doc. 24), or alternatively, to stay (Doc. 26) the action,

and to strike portions of the complaint (Doc. 28). Plaintiffs have responded, opposing the motions (Docs. 30, 31, 32), and Defendants have filed replies (Docs. 33, 34, 35).

Fifteen days after Defendants filed their reply brief in support of their motion to dismiss, Plaintiffs moved to amend the complaint to, among other things, add multiple parties and claims, withdraw one claim, and augment certain allegations. (Doc. 36.) Plaintiffs have responded, opposing the motion (Doc. 39), and Defendants have replied (Doc. 43).

For the reasons set forth below, the motion to dismiss will be granted in part and denied in part, Defendants' motion to stay and motion to strike will be denied as moot, and Plaintiffs' motion to amend will be granted in part and denied in part.

I.  **BACKGROUND**

The basic facts alleged, as relevant to the motions before the court and taken in the light most favorable to Plaintiffs, are as follows:

Plaintiffs Sybil Rummage and Betty Deal ("Resident Plaintiffs") are residents of a nursing home facility located at 710 Julian Road. (Doc. 1 ¶¶ 7, 10-11.) When each Plaintiff entered the facility prior to 2020, it was known as "Salisbury Center" and was owned and operated by Genesis Healthcare ("Genesis"). (Id. ¶ 31.) When they arrived at Salisbury Center, Resident Plaintiffs executed admission agreements outlining the

2

care and basic services they should expect to receive. (Id. ¶ 60.)
Plaintiffs Sonya Hooker, Donna Deal, and Kenneth Michael Deal
("Sponsor Plaintiffs") are family members who sponsor and assist
the Resident Plaintiffs. (Id. ¶¶ 6, 8-9.)

On February 1, 2020, Salisbury Center was sold, and
operational control was transferred to The Citadel. (Id. ¶ 26.)
The services and care at Salisbury Center had deteriorated as
Genesis fought financial trouble (id. ¶ 32), and conditions grew
worse once The Citadel took over (id. ¶ 37). Residents experienced
various problems from alleged chronic understaffing as part of the
Defendants' business model, such as failures to provide necessary
medication and care to the residents and to adequately communicate
with sponsors. (Id. ¶¶ 75-77, 121, 123, 144-148, 240.) Plaintiffs
suffered general emotional distress because of these failures.
(Id. ¶¶ 121, 125, 161, 174.) According to the Centers for Medicare
and Medicaid Services ("CMS"), during the time of The Citadel's
ownership, the quality rating of the facility declined from one to
zero out of five stars. (Id. ¶ 43.) The Citadel was eventually
"subject to more frequent inspections, escalating penalties, and
potential termination from Medicare and Medicaid" as part of the
state's "Special Focus Facility" program for nursing home
facilities with a "history of serious quality issues." (Id. ¶ 41.)

The Citadel is a limited liability company organized under
North Carolina law and holds a license with the State of North

Carolina, Department of Health and Human Services, Division of Health Services Regulation, to operate as a for-profit combination skilled nursing facility and adult care home. (Id. ¶ 11.) Defendant Salisbury Two NC Propco, LLC is a limited liability company organized under North Carolina law and owns the property where the facility is operated. (Id. ¶ 13.) Defendant Accordius is a limited liability company organized under the laws of the State of New York and provides "management" services to The Citadel. (Id. ¶¶ 14-15.) Portopiccolo is a limited liability company organized under New Jersey law and provides "back office services" to The Citadel. (Id. ¶¶ 16-17.) The sole members and owners of all limited liability companies involved are Simcha Hyman and Naftali Zanziper. (Id. ¶¶ 18-20.)

Beginning when The Citadel assumed operations, Plaintiffs allege, The Citadel was purposefully and consistently staffed inadequately such that it was unable to provide the services required for the safety and well-being of its residents. (Id. ¶ 58.) Plaintiffs' original complaint brings four claims for relief: (1) breach of contract, (2) violation of the North Carolina Unfair Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 71-1.1., (3) breach of fiduciary duty, and (4) negligent infliction of emotional distress ("NIED"). (Id. ¶¶ 207-253.) The proposed amended complaint seeks to withdraw the breach of fiduciary duty claim, add a negligence claim, and add several parties and other

4

Defendant-related facilities.  Plaintiffs seek damages reflecting payments they made and disgorgement of Medicare or Medicaid payments made on their behalf "reflecting the reasonable value of the staffing hours they were entitled to have receive and did not receive."  (Doc. 1 ¶ 2.)  Plaintiffs allege class action treatment, citing "hundreds" of plaintiffs and 15 common questions that include the following:  the use of "uniform policies and systems" of management; allegedly deceptive advertising and statements; "[w]hether the law requires the facility to maintain staffing at a reasonable across-the-board level" which is alleged to be 4.1 hours per resident day of "total nurse staffing" and 0.75 hours per resident day of "Registered Nurse staffing"; and damages.  (Id. ¶ 202.)

Defendants moved to dismiss the complaint, or in the alternative to stay, and to strike certain allegations of the complaint.  Plaintiffs responded with oppositions and filed a motion to file an amended complaint that purports to shore up deficiencies of the original complaint and to expand this action. Defendants oppose any further amendment.

All motions are fully briefed and ready for consideration.

## II.  ANALYSIS

### A.  Motion to Amend and Motion to Dismiss

Plaintiffs' motion to amend, filed on the heels of the briefing of Defendants' motion to dismiss, seeks to amend the

complaint to (1) add Ms. Kilgo and her sponsor and adult daughter, Ms. Lee, as Plaintiffs; (2) join Myers Park and Myers Park Propco, LLC, as Defendants; (3) "provide greater factual and legal support" that all defendants "should be held jointly and severally liable due to their direct involvement on the facts"; (4) expand the proposed class to all thirty-seven facilities owned and operated by Hyman and Zanziper; (5) add claims for negligence and equitable relief; and (6) withdraw their fiduciary duty claim.[1]  (Doc. 36.) Plaintiffs argue the motion to amend should be granted because it "is made in good faith, will assist in ensuring litigation of the material issues, and is neither frivolous nor will cause any material prejudice."[2]  (Doc. 37.)  Defendants argue the motion should be denied because it is futile, in bad faith, and unduly prejudicial.  (Doc. 39.)

Where a complaint is properly amended, it supersedes the prior complaint and becomes the operative pleading.  <u>Fawzy v. Wauquiez Boats SNC</u>, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original

---

[1] Plaintiffs have also removed some of the terms Defendants label as "inflammatory" in their motion to strike, such as "cut rate" medical supplies and "reckless" cost-cutting measures.  (<u>See</u> Doc. 29 at 4-5.)

[2] A party seeking amendment from the court "must state good cause." L.R. 7.3(j).  Plaintiffs claim good cause exists because Ms. Kilgo and her family did not seek counsel until June 2021 and "it took a period of time . . . to obtain all of the relevant medical, personal and nursing home chart records . . . before they could sue."  (Doc. 43 at 8.)

6

complaint of no effect." (citation omitted)).  But where a plaintiff moves to amend a complaint in response to a motion to dismiss, the motion to amend has the potential to either frustrate or moot the resolution of the pending motion to dismiss.  The court therefore must exercise some level of discretion in deciding which motions to resolve.  Because these two motions are fully briefed and share the same standard of review in part, the court will consider all motions and will not deem the motion to dismiss mooted by the requested amendment.

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend the complaint once as a matter of course within 21 days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Rule 12(b), (e), or (f).  After that period, a party may amend only with either the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  The court therefore has the discretion to entertain the pending motion to dismiss, or to consider the motion to amend and then permit the parties to re-brief the motion to dismiss. Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that "the grant or denial of an opportunity to amend is within the discretion of the District Court").  And while district courts have discretion to grant or deny a motion to amend, the Fourth Circuit has interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to

the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (citation omitted); Foman, 371 U.S. at 182 (same).

"[I]f the proposed change advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 225 (8th Cir. 1994) (citing Charles A. Wright & Arthur Miller, Fed. Prac. & Proc.: Civil, § 1487, at 637 (1991)) (quotation omitted and alterations adopted); see Joyner v. Abbott Labs, 674 F. Supp. 185, 190 (E.D.N.C. 1987) (same). "To determine whether a proposed amended complaint would be futile, the Court reviews the revised complaint under the standard used to evaluate a motion to dismiss for failure to state a claim." Amaya v. DGS Construction, LLC, 326 F.R.D. 439, 451 (D. Md. 2018) (citing Katyle v. Penn National Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011)). Thus, "[a] motion to amend a complaint is futile 'if the proposed claim would not survive a motion to dismiss.'" Pugh v. McDonald, 266 F. Supp. 3d 864, 866 (M.D.N.C. 2017) (quoting James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).

A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980

8

F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

Rules 12(b)(6) and 15 should be balanced against Federal Rule of Civil Procedure 8(a)(2), which provides only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6), and thus Rule 15, protect against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570 (2007); see Iqbal, 556 U.S. at 678 (2009).  When considering a Rule 12(b)(6) motion and opposition to a Rule 15 motion to amend, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

9

### 1. Immunity Defense

Defendants first argue that the complaint should be dismissed, and any amendment disallowed, on the ground that the claims for understaffing are barred by the North Carolina Emergency or Disaster Treatment Protection Act ("EDTPA"). N.C. Gen. Stat. §§ 90-21.130 to 90-21.134.[3]

The purpose of the EDTPA is to "promote the public health, safety, and welfare of all citizens by broadly protecting the health care facilities . . . from liability that may result from treatment of individuals during the COVID-19 public health emergency under conditions resulting from circumstances associated with the COVID-19 public health emergency." N.C. Gen. Stat. § 90-21.131. The EDTPA shields health care facilities from liability from their "decisions or activities in response to or as a result of the COVID-19 pandemic," "during the period of the COVID-19 emergency declaration," if such healthcare services are provided in "good faith." N.C. Gen. Stat. § 90-21.133. To overcome immunity, plaintiffs may allege the actions "were caused by . . . gross negligence, reckless misconduct, or intentional infliction of harm." Id. However, the statute precludes claims of gross

---

[3] Defendants earlier moved to stay these proceedings pending the result of a North Carolina state court case concerning the constitutionality of the EDTPA. (See Doc. 26; Docket Sheet, Howze v. Treyburn Rehab. Ctr., LLC, No. 21-272 (N.C. Ct. App. 2022), available at https://appellate.nccourts.org/dockets.php?court=2&docket=2-2021-0272-001&pdf=1&a=0&dev=1.) That case has since been dismissed following a settlement, and Defendants have withdrawn their motion. (Doc. 56.)

10

negligence, reckless misconduct, or intentional infliction of harm based on shortages of staff or other resources.[4] Id.

Plaintiffs allege that the understaffing began once Hyman and Zanziper assumed control of the facility on February 1, 2020. (Doc. 1 ¶¶ 37-38, 58.)  On March 10, 2020, Governor Roy A. Cooper declared a State of Emergency "based on the public health emergency posed by COVID-19."  Exec. Order No. 116 (2020).  No COVID-19 emergency declaration was in place from February 1 through March 9, 2020.  Thus, because Plaintiffs allege harms resulting from understaffing that occurred before the onset of the COVID-19 emergency declaration, Defendants' statutory immunity arguments based on the EDTPA are premature at this stage.

Defendants also argue that Plaintiffs' claims are barred by Session Law 2020-89, entitled "An Act to Provide Limited Immunity from Liability for Claims Based on Transmission of Coronavirus Disease 2019 (COVID-19)."  N.C. Gen. Stat. §§ 99E-70 - 99E-72. Session Law 2020-89 shields individuals, corporations, and other legal entities from "claim[s] for relief arising from any act or omission alleged to have resulted in the contraction of COVID-19,"

---

[4] Plaintiffs contend that Portopiccolo "does not fit in the category [of] health care provider under § 90-21.133(a) and § 90-21.132(7)" and would thus not be entitled to immunity under the statute.  (Doc. 30 at 9.) This argument is unpersuasive.  It is undisputed that The Citadel is a health care provider, and Plaintiffs' argument for liability for the non-facility Defendants is premised on their "legal responsibility for the acts or omissions of a health care provider" as clearly covered under the statute.  See N.C. Gen. Stat. § 90-21.133(a).

11

unless the act or omission constitutes "gross negligence, willful or wanton conduct, or intentional wrongdoing." N.C. Gen. Stat. § 99E-71(a). This immunity "applies to claims arising no later than 180 days after the expiration or rescission of Executive Order No. 116 issued March 10, 2020." N.C. Gen. Stat. § 99E-72.

Plaintiffs have submitted affidavits of Citadel staff and residents and their families that support their claims and are explicitly relied upon (Docs. 12-1 through 13-26), and their authenticity is not challenged. Ordinarily, the court cannot consider such factual proof at the motion to dismiss stage, but it may consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. Copeland v. Bieber, 789 F.3d 484, 490 (4th Cir. 2015) (quoting Phillips v. LCI International, Inc., 190 F.3d 609, 618 (4th Cir. 1999)); see, e.g., Luy v. Baltimore Police Department, 326 F. Supp. 2d 682, 688 (D. Md. 2004), aff'd, 120 F. App'x 465 (4th Cir. 2005) ("The defendants have attached a number of documents to their motion to dismiss, including . . . several affidavits from [defendant's] employees. . . . [T]he court may consider these to the extent that they contain any of the defamatory statements relied on in the plaintiff's complaint."); Ohio Valley Environmental Coalition v. Caperton, 500 F.Supp.3d 488, 493 n.1 (S.D.W. Va. 2020) ("[T]he

12

Court finds that the [supporting] affidavit is incorporated into the Complaint by reference, that it is integral to the Complaint, and that the Plaintiffs did not challenge its authenticity."). That is the case here. (See, e.g., Doc. 1 at 5 n.4, 6 n.5, 13 n.16, 24 n.42, 28 n.48, 31 n.57, 32 n.60-62, 33 n.63, 34 n.68-71, 36 n.76-80.)

As Defendants contend, the affidavits appear to demonstrate that Plaintiffs' claims substantially concern the impact of the COVID-19 pandemic on residents, staffing, and supplies on The Citadel. (See Doc. 33 at 2-3 (quoting Plaintiffs' affidavits).) And Plaintiffs appear to concede that harms "resulting from circumstances associated with the COVID-19 public health emergency" would be protected by the COVID-19 immunity bill. N.C. Gen. Stat. § 90-21.131 (See Doc. 30 at 7-9.) However, the affidavits also contain allegations of harms that could be unrelated to the COVID-19 pandemic. (See, e.g., Doc. 13-15 ¶¶ 6-12 (resident assaulted in her room); Doc. 13-16 ¶ 8 (resident wearing dirty clothes, with piled-up laundry, and with meals up to two hours late before the COVID-19 lockdown); Doc. 13-19 ¶ 7 (resident laundry issues and lack of supplies in February 2020 before COVID-19 lockdown); Doc. 13-26 ¶¶ 7-8 (resident with severe bedsores first discovered in January 2020).) Critically, Plaintiffs also allege in their complaint that many of the problems with the facility "occurred at the Citadel in February 2020 before

the advent of COVID-19 at the Facility." (Doc. 1 ¶ 38; but see Doc. 1 ¶¶ 39, 97, 175 (complaining of issues related to COVID-19).) Thus, taking these allegations as true, as the court must at this preliminary stage, a motion to dismiss on this basis must be denied.

### 2. Breach of Contract

Plaintiffs' first cause of action in the complaint, repeated in substantively the same form in the proposed amended complaint, is for breach of contract between the Resident Plaintiffs and The Citadel. (Doc. 1 ¶¶ 207-221; Doc. 36-1 ¶¶ 237-254.) Resident Plaintiffs allege they had either an express or, in the alternative, an implied-in-fact contract with The Citadel. Plaintiffs further contend this contract was breached when The Citadel experienced chronic understaffing resulting in harm to the residents.

Under North Carolina law, the essential elements of a breach of contract claim are the existence of a valid contract and a breach of its terms. Eli Research, Inc. v. United Communications Group, LLC, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004) (citing Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)). A valid contract requires an agreement and sufficient consideration. See Creech ex rel. Creech v. Melnik, 556 S.E.2d 587, 591 (N.C. Ct. App. 2001). As such, to state a claim, Resident Plaintiffs must plausibly allege that the parties had an agreement.

14

A contract implied-in-fact "arises where the intention of the parties is not expressed." Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc., 546 F. Supp. 3d 440, 450 (M.D.N.C. 2021) (quoting Snyder v. Freeman, 266 S.E.2d 593, 602 (N.C. 1980)). Instead, the agreement between the parties "is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract." Id. A contract implied-in-fact may be found where "a contract lapses but the parties to the contract continue to act as if they are performing under a contract," and neither party "clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound" by the terms of the lapsed agreement. Celanese Acetate, LLC v. Lexcor, Ltd., 632 F. Supp. 2d 544, 550 (W.D.N.C. 2009) (citation omitted). In evaluating a contract implied-in-fact on a Rule 12(b)(6) motion, "[w]hether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact." Snyder, 266 S.E.2d at 602.

Here, Plaintiffs allege that they had either an express or an implied-in-fact contract with The Citadel for nursing home care and services in exchange for payment. (See, e.g., Doc. 1 ¶¶ 207-221.) They allege that the terms of the agreement, whether express

15

or implied, include the promise to maintain sufficient staffing and "abide by relevant rules, laws, and standards." (Id.) Defendants move to dismiss the breach of contract claim on the ground that Plaintiffs' prior residency agreement with Genesis does not contain provisions promising to maintain "any specific staffing levels" or to "abide by relevant rules, laws, and standards." (Doc. 25 at 7-9.) Defendants also argue that Resident Plaintiffs cannot allege they had an implied-in-fact contract, in the alternative, as the existence of a written agreement between Genesis and the Resident Plaintiffs bars any claim of an implied-in-fact contract. Defendants further argue that if no express contract exists, there is no action on their or the Resident Plaintiffs' part that constitutes an offer or acceptance to show mutual assent to an implied-in-fact contract. (Doc. 33 at 6-7.)

Whether express or implied, there is no dispute that Plaintiffs have alleged a valid agreement. Resident Plaintiffs paid thousands of dollars each month in exchange for the ability to reside at The Citadel. The resident admission agreements and accompanying forms executed upon Resident Plaintiffs' admission to the nursing home facility contain extensive detail about the parties' respective obligations. In addition to those provisions, compliance with regulations in effect at the time the contract is signed may also be a term of an agreement. See Sanders v. State Personnel Commission, 677 S.E.2d 182, 187 (N.C. Ct. App. 2009)

16

("[A]ny relevant regulations . . . as well as statutory and constitutional provisions must be read into any contract that might exist between plaintiffs and their employers."); <u>Mullen v. Saber Healthcare Group, LLC</u>, No. 5:18-CV-317-BO, 2020 WL 5118038, at \*5 (E.D.N.C. Aug. 31, 2020) ("A party's compliance with regulations can constitute a term of an otherwise valid contract." (citing <u>Sanders</u>, 677 S.E.2d at 187)). Plaintiffs allege a valid express contract, and they plausibly allege that The Citadel contractually committed itself to maintaining adequate staffing levels for the proper care of their residents within the structure of North Carolina regulations.[5]

Furthermore, Resident Plaintiffs' breach of contract claim does not rest solely on an alleged failure to comply with North Carolina regulations. Rather, both parties agree that The Citadel was contractually obliged to provide each resident with necessary nursing, housekeeping, and personal care (<u>see</u> Doc. 25 at 7), and the complaint alleges consistent staffing, medication, and communication failures. Moreover, based on state inspections, the complaint alleges a quality rating of zero out of five stars and placement in the state's "Special Focus Facility" program for

---

[5] In the alternative, The Citadel's continued care for the Resident Plaintiffs in return for their payments clearly constitutes action consistent with an implied-in-fact contract. <u>See</u> <u>Ellis Jones, Inc. v. W. Waterproofing Co., Inc.</u>, 312 S.E.2d 215, 218 (N.C. Ct. App. 1984) (noting that an implied-in-fact contract exists by virtue of the parties' conduct, rather than in any explicit set of words).

17

nursing homes with a "history of serious quality issues." (See e.g., Doc. 1 ¶¶ 41, 43, 50-51.) These facts, reasonably construed in the light most favorable to Plaintiffs, state a plausible claim for breach of contract.

### 3. North Carolina Unfair and Deceptive Trade Practice Act

Plaintiffs' second cause of action in both the complaint and proposed amended complaint alleges that "Defendants engaged in one or more unfair or deceptive acts or practices, or unfair methods of competition, or in affecting commerce" in violation of the UDTPA. (Doc. 1 ¶¶ 222-234; Doc. 36-1 ¶¶ 255-269.) Defendants make multiple arguments to dismiss Plaintiffs' UDTPA claim. Most notably, they argue that a mere breach of contract is insufficient to state a claim under the UDTPA. (Doc. 25 at 17-18.)

The UDTPA bars any "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. To sustain a UDTPA claim, Plaintiff must show that: (1) Defendant committed an unfair or deceptive act or practice, or an unfair method of competition, that (2) was in or affecting commerce, which (3) proximately caused actual injury to it. A breach of contract alone, even if intentional, does not support a UDTPA claim. See Wachovia Bank & Trust Co. v. Carrington Development Associates, 459 S.E.2d 17, 21 (N.C. Ct. App. 1995). Instead, "substantial aggravating circumstances" must be present to maintain a UDTPA

18

claim. <u>Branch Banking & Trust Co. v. Thompson</u>, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992) (quoting <u>Bartolomeo v. S.B. Thomas, Inc.</u>, 889 F.2d 530, 535 (4th Cir. 1989)).

Here, the complaint does not allege any facts which constitute "substantial aggravating circumstances." Plaintiffs merely allege they did not receive what they bargained for under an express or implied-in-fact contract. Plaintiffs' attempts to allege aggravating circumstances by reiterating statutory violations, making conclusory statements about Defendants' state of mind, and appealing to mere puffery promising that Defendants' "staff are in the field continuously ensuring that our 5-Star service and Core Values are maintained" falls short. (<u>See</u> Doc. 1 ¶¶ 50-51; Doc. 36-1 ¶¶ 60-61.) These are all insufficient to support a UDTPA claim separate from the breach of contract. <u>See</u> <u>Thompson</u>, 418 S.E.2d at 700 (stating that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain a[] [UDTPA] action"); <u>see also</u> <u>Hookah Distributors, Inc. v. Avior, Inc.</u>, 401 F. Supp. 3d 653, 659-60 (W.D.N.C. 2019) (noting that under North Carolina law, "mere puffery" cannot form the basis of fraud or UDTPA claims); <u>cf.</u> <u>Verisign, Inc. v. XYZ.com LLC</u>, 848 F.3d 292, 302-03 (4th Cir. 2017) (holding that "puffery or bluster on which no reasonable consumer would rely" does not satisfy the "false or misleading . . . representation" element of the Lanham Act (citation omitted)).

19

As Plaintiffs have failed to plausibly allege a UDTPA claim, the motion to dismiss claim two of the complaint against all Defendants will be granted, and because Plaintiffs' proposed amended complaint offers no substantively different allegations, the motion to amend as to this claim is denied as futile.

### 4. Negligent Infliction of Emotional Distress

Plaintiffs' fourth claim of the original complaint, which is the third claim of the proposed amended complaint, alleges that The Citadel is liable for NIED under North Carolina law. (Doc. 1 ¶¶ 246-53; Doc. 36-1 ¶¶ 270-277.) The elements of the tort of NIED require that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics, 395 S.E.2d 85, 97 (N.C. 1990). "Severe emotional distress" means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Wrenn v. Byrd, 464 S.E.2d 89, 92 (N.C. Ct. App. 1995) (citation omitted) (holding that evidence of "moderate depression" diagnosed by a physician was sufficient to establish severe emotional distress); see Williams v. HomEq Servicing Corp., 646 S.E.2d 381, 384-85

20

(N.C. Ct. App. 2007) (plaintiffs' uncorroborated testimony that they suffered from chronic depression was insufficient to establish a claim of severe emotional distress).

Here, Plaintiffs do not allege any specific facts to render the requisite severe emotional distress plausible. For example, Plaintiffs pleaded no facts showing that any Plaintiff sought therapy or treatment for any psychiatric condition arising out of The Citadel's actions. See Swick v. Wilde, No. 1:10-CV-303, 2012 WL 3780350, at *30 (M.D.N.C. Aug. 31, 2012). Instead, Plaintiffs merely allege that Ms. Hooker was "at her wit's end," and Donna Deal, Mike Deal, and Ms. Rummage all dealt with general "distress." (Doc. 30 at 21; see Doc. 1 ¶¶ 118, 125, 174; Doc. 36-1 ¶¶ 127, 134, 183.) Temporary anxiety or distress, or more long-lasting anger and frustration, is not sufficient to establish severe emotional distress, and Plaintiffs have alleged no further facts showing any "severe and disabling" mental or emotional condition. See Ruark, 395 S.E.2d at 97.

Accordingly, the court will dismiss all claims of NIED against The Citadel. And because Plaintiffs' proposed amended complaint offers no substantively different allegations, the motion to amend as to this claim is denied as futile.

### 5. Breach of Fiduciary Duty

Plaintiffs' third cause of action of the original complaint alleges that Defendants breached a fiduciary duty to the Sponsor

Plaintiffs. (Doc. 1 ¶¶ 235-245.) But as Plaintiffs have withdrawn this claim in their proposed amended complaint (Doc. 36-1), the motion to amend will be granted and the motion to dismiss Sponsor Plaintiffs' breach of fiduciary duty claim will be denied as moot.

### 6. Joinder

Plaintiffs move to amend their complaint to join (1) Ms. Kilgo, a resident of another Citadel-related facility, Myers Park, and her sponsor and adult daughter, Ms. Lee, as Plaintiffs under Rule 20; and (2) Myers Park and another limited liability company, Myers Park Propco, LLC, as Defendants under Rule 20. (Doc. 37 at 4-5.) Defendants argue that Plaintiffs' attempted joinder is improper because Federal Rule of Civil Procedure 20 "does not authorize a plaintiff to join defendants in a single lawsuit when the plaintiff's claims against the defendants are unrelated." (Doc. 39 at 18.) Plaintiffs' response is largely that the other nursing home is part of "the same enterprise" with the "same defective staffing practices." (Doc. 37 at 4.)

Plaintiffs do not contend that joinder is mandatory. See Fed. R. Civ. P. 19. Therefore, the provisions of Rule 20 apply. Rule 20(a)(1) permits that a person may add as plaintiff persons as to whom "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and "any question of law or fact common to all

22

plaintiffs will arise in the action." Similarly, Rule 20(a)(2) provides that a party may be joined as a defendant if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "[A] court determining whether to grant a motion to amend to join additional plaintiffs must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." Hinson v. Norwest Financial South Carolina, Inc., 239 F.3d 611, 618 (4th Cir. 2001). "The United States Supreme Court has articulated that 'the impulse is toward the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" Todd v. Cary's Lake Homeowners Ass'n, 315 F.R.D. 453, 456 (D.S.C. 2016) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966)). Further, the Fourth Circuit has explained that "Rule 20 gives courts wide discretion concerning the permissive joinder of parties." Aleman v. Chugach Support Services, Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007).

The proposed amended complaint alleges claims by Ms. Kilgo and Ms. Lee against a separate Citadel-related facility, Myers Park, and a separate LLC, Myers Park Propco, LLC. (Doc 36-1 ¶¶ 16-

23

17, 29-31, 240, 267, 292.) Plaintiffs contend that Ms. Kilgo's and Ms. Lee's claims against Myers Park and Myers Park Propco, LLC are common to those of the Plaintiffs in the original complaint because they are premised on the claim that the Defendants understaffed their facility as part of a common plan. (Doc. 37 at 4-5.) But this contention fails because Plaintiffs' claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the other claims. Fed. R. Civ. P. 20(a)(1)(A). While there is an allegation of chronic understaffing by design, the understaffing, if demonstrated, would only be evidence to support a claim that any particular Plaintiff failed to receive the services contracted for – that is, that he or she did not receive the proper care and oversight by the nursing and other staff. Thus, any particular Plaintiff's claim does not arise out of the alleged fact of a plan to understaff; rather, it would arise, if at all, based on the actual staffing each resident received.[6] Moreover, allowing Plaintiffs' claims would balloon this lawsuit to include some 37 facilities managed or operated by the various Defendants, and

---

[6] Defendants also point out that Plaintiffs Kilgo and Lee allege conduct occurring during a 90-day period beginning seven months after the onset of the COVID-19 pandemic such that these claims may be barred by state immunity law. (Doc. 39 at 5-6; Doc. 36-1 ¶¶ 209-224.) See N.C. Gen. Stat. § 90-21.133 ("[A]ny health care facility . . . shall have immunity from any civil liability for any harm or damages alleged to have been sustained . . . as a result of the COVID-19 pandemic."). Because the court denies joinder of Ms. Kilgo and Ms. Lee, it need not reach this contention.

24

including hundreds, if not more, individual residents, rendering the litigation unmanageable. Contrary to Plaintiffs' claim that all claims are common because "a single defendant commonly manages all of [the facilities] . . . or controls their finances, budgets, vendor contracts, wages, and staffing," (Doc. 37 at 14), allowing amendment would actually merely create hundreds of individual questions as to the service received by each resident. See Aleman, 485 F.3d at 218 n.5 ("The court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." (citations omitted)); CineTel Films, Inc. v. Does 1-1,052, 853 F. Supp. 2d 545, 553-54 (D. Md. 2012) (finding joinder inappropriate in the copyright infringement context where the alleged infringement "was committed by unrelated defendants, through independent actions, at different times and locations"); Hard Drive Productions, Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011) ("[P]ermitting joinder in this case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case. . . . "[It] would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony.").

Therefore, Plaintiffs' motion to amend the claims to add

Ms. Kilgo and Ms. Lee as Plaintiffs, and Myers Park and Myers Park Propco, LLC as Defendants, pursuant to Rule 20 will be denied.

### 7. Joint and Several Liability

Plaintiffs' claims are brought against The Citadel, with whom Resident Plaintiffs contracted, and rely on the "instrumentality rule" to allege claims of civil conspiracy and concert of action to pierce the corporate veil and reach the remaining Defendants. (Doc. 1 ¶¶ 254-62; Doc. 36-1 ¶¶ 278-288.) Plaintiffs argue that their amended complaint "provide[s] greater factual and legal support" that all defendants "should be held jointly and severally liable due to their direct involvement on the facts." (Doc. 36 ¶ 4.) Plaintiffs' amended complaint provides additional alleged facts that "The Citadel Salisbury and Citadel Myers Park facilities follow common policies and procedures set by Portopiccolo and Accordius, use vendors chosen by Portopiccolo, have budgets controlled by Portopiccolo, and use contracts specified by Portopiccolo." (Doc. 36-1 ¶ 5; see also id. at ¶¶ 4, 6.) Plaintiffs' amended complaint also alleges that Defendants control "74 [corporations] [that] all have the same members, same managers, and same address," and, "[o]n information and belief," the various corporations "are undercapitalized" and "some or all have no employees." (Id. ¶ 226.) Plaintiffs also plead that "Defendants should be held jointly and severally liable under the doctrine of civil conspiracy." (Id. ¶ 285.)

26

### a. Instrumentality Rule

The North Carolina Supreme Court, in <u>Glenn v. Wagner</u>, 329 S.E.2d 326 (N.C. 1985), outlined when a parent corporation can be liable for the wrongs of another. North Carolina courts "will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity," whenever necessary to prevent fraud or achieve equity. <u>Id.</u> at 330 (citation omitted). Under the mere instrumentality rule, "[a] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded." <u>Id.</u> (quoting <u>B-W Acceptance Corp. v. Spencer</u>, 149 S.E.2d 570, 575 (N.C. 1966)). In North Carolina, an entity's separate form may be disregarded when (1) one had complete control of the entity, (2) one used that control to commit fraud or violate a positive legal duty, and (3) the fraud or violation caused the injury at issue. <u>United States v. Greer</u>, 383 F. Supp. 2d 861, 867 (W.D.N.C. 2005) (citing <u>Glenn</u>, 329 S.E.2d at 330), <u>aff'd</u>, 182 F. App'x 198 (4th Cir. 2006)).

A corporation's separate existence is not easily disregarded. Piercing the corporate veil is a "drastic remedy" that should be invoked "in only an extreme case where necessary to serve the ends

27

of justice." Best Cartage, Inc. v. Stonewall Packaging, LLC, 727 S.E.2d 291, 300 (N.C. Ct. App. 2012) (quoting Dorton v. Dorton, 336 S.E.2d 415, 419 (N.C. Ct. App. 1985)). "Like lightning, it is rare and severe." Southern Shores Realty Services, Inc. v. Miller, 796 S.E.2d 340, 351 (N.C. Ct. App. 2017) (quoting State ex rel. Cooper v. Ridgeway Brands Manufacturing, LLC, 666 S.E,2d 107, 112 (N.C. 2008)).

Several factors are relevant to determine whether a corporation is so dominated that there is "complete control" to satisfy the instrumentality rule: (1) "inadequate capitalization"; (2) failure to comply with corporate formalities; (3) "[c]omplete domination and control of the corporation so that it has no independent identity"; and (4) "excessive fragmentation of a single enterprise into separate corporations." Glenn, 329 S.E.2d at 330-31. These are merely factors to be considered, not an exhaustive checklist, as the mere instrumentality rule is an equitable doctrine:

> It should be remembered that the theory of liability under the instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation. It is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had "no separate mind, will or existence of its own" and was therefore the "mere instrumentality or tool" of the dominant corporation.

28

Id. at 332.

A breach of contract can satisfy the "positive legal duty" requirement of the instrumentality rule. See East Market Street Square, Inc. v. Tycorp Pizza IV, Inc., 625 S.E.2d 191, 199 (N.C. Ct. App. 2006) ("[W]e consider performance under a contract to be a positive legal duty, the violation of which constitutes a clear wrong done to plaintiffs." (citation omitted)). However, while fraudulent conduct is not required, the result of such conduct must be sufficiently "unjust." See McLesky v. Davis Boat Works, Inc., 225 F.3d 654 (4th Cir. 2000) (unpublished) (holding that the "allegation that [owners of corporate defendants] frustrated [plaintiff's] contract rights by redistributing profits of [the corporate defendant for whom plaintiff worked] among the various corporate defendants" could support piercing the corporate veil);[7] see also Miller, 796 S.E.2d at 354 (court held there was sufficient evidence from which a reasonable fact finder could conclude the defendant's liability was not "simply [based] upon his exercise of ordinary daily management of the [defendant] LLCs" as "it appears that he made the decision to intentionally breach

---

[7] While the Fourth Circuit does not accord precedential value to its unpublished opinions, it has noted that "they are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted).

29

the parties' contracts without input from the other LLC members, and attempted to use the LLCs to achieve an unjust result").

Thus, where the claim is based on contract, North Carolina courts have required that the Plaintiff allege and show that the corporation was created "for the sole purpose of entering the contract at issue and at the same time unjustly insulating the defendant from liability under the contract." Best Cartage, 727 S.E.2d at 300-01 (citing Tycorp Pizza, 625 S.E.2d 191, and granting motion to dismiss). For example, where a corporation was undercapitalized, never generated or received any income, and lacked the accoutrements of a normal business such as a bank account and corporate records, and was set up for the sole purpose of entering into contracts as a shell so there would be no assets should a judgment be entered, liability is plausible. See NovaFund Advisors, LLC v. Capitala Group, LLC, 3:18-cv-1023(MPS), 2021 WL 3568892, at *11-13 (D. Conn. Sept. 11, 2021) (denying motion to dismiss and applying North Carolina law). By comparison, where the entity engaged in business transactions with other customers who were not plaintiffs, the standard has not been met. Dacat, Inc. v. Jones Legacy Transportation, LLC, 844 S.E.2d 625 (N.C. Ct. App. 2020) (unpublished), review denied, 853 S.E.2d 154 (2021) (finding that the defendant corporation "hired and contracted with various [customers]" did not support piercing the veil of the LLC as it "show[ed] that [defendant corporation] was

30

not created for the sole purpose of entering the valid contract with Plaintiffs").

In the present case, Plaintiffs allege that Defendants have excessively fragmented their business entities by "set[ting] up a convoluted maze of business entities, in an effort to avoid liability." (Doc. 36-1 ¶ 55.) Every Defendant limited liability company is commonly owned by Hyman and Zanziper. (Id. ¶¶ 18-24.) Hyman and Zanziper are also alleged to exercise complete dominion and control over The Citadel, the contracting party, by performing executive functions through the LLCs, which they control, such as determining the budget and staffing levels, such that the LLCs, including The Citadel, are mere instrumentalities. (Id. ¶¶ 56-59.) Hyman and Zanziper are alleged to "disregard[] corporate separateness" regarding budgeting. (Id. ¶ 28.) Further, Hyman and Zanziper, through Portopiccolo, provide financial and accounting control for all nursing homes, including The Citadel. (Id. ¶¶ 1, 4, 6, 13, 24, 55, 58-59, 226, 287.) Portopiccolo (with Hyman and Zanziper) is also alleged to control "key aspects of local nursing home facility operations" such as decisions managing vendor contracts, hiring vendors, setting wage and pay scales for workers, hiring contract labor, and dealing with relevant lenders. (Id. ¶¶ 24, 55, 59.) Plaintiffs further allege that Accordius provides "management services" for thirty-seven facilities, including The Citadel, across North Carolina owned by Hyman and

31

Zanziper (id. ¶¶ 4, 6, 55, 226.), while Portopiccolo handles all "financial and accounting matters" (id. ¶ 24). Plaintiffs allege that Hyman, Zanziper, and Portopiccolo are so dominant in the operations of The Citadel that The Citadel's facility administrator is "frozen out of all significant knowledge or involvement in operational financial matters" in violation of North Carolina law. (Id. ¶¶ 28, 57, 226.) Hyman and Zanziper allegedly control the ability to "pay workers, raise wage scales, add new positions, hire and fire vendors, and have an understanding of the facility's revenues and profitability," which "deprive[s] [the administrator] of her ability to perform her job." (Id. ¶ 59.) Through the exercise of this control, Hyman and Zanziper allegedly caused the understaffing at The Citadel which is claimed to have caused Plaintiffs' injuries. (Id. ¶ 282.)

Additionally, Plaintiffs allege that the various Defendant LLCs are undercapitalized. The Citadel allegedly does not own the property where it operates, and it instead pays rent to Salisbury Two NC Propco, LLC. (Id. ¶¶ 20, 65.) Salisbury Two NC Propco, LLC operates under "complex loan arrangements" such that the rent paid by The Citadel ultimately benefits a third party, Oxford Finance. (Id. at ¶¶ 65-67.) Portopiccolo is also "leveraged and indebted to private equity lenders" such that it is unable to afford proper staffing and supply levels. (Id. at ¶¶ 38, 65-67.) Although the facilities allegedly follow some corporate

32

formalities "on paper" (id. ¶¶ 65-67), Plaintiffs allege that Hyman and Zanziper's actions "reflect[] a misuse of the corporate form" (id ¶ 55).

Further, Plaintiffs allege that piercing the corporate veil is equitably necessary. See Best Cartage, 727 S.E.2d at 300. Plaintiffs assert the impossibility of recovery against The Citadel for breach of contract due to its undercapitalization. See Becker v. Graber Builders, Inc., 561 S.E.2d 905 (N.C. Ct. App. 2002) (allowing a complaint to pierce the corporate veil where a wholly-owned corporation breached its contract, by failing to install an adequate septic system in violation of state law, and was administratively dissolved sometime after the contract was entered into); Postell v. B & D Construction Co., 411 S.E.2d 413, 419-20 (N.C. Ct. App. 1992) (allowing an employee to pierce the corporate veil of his corporate employer where the sole shareholder of the corporation exercised complete control over the corporation, failed to adequately capitalize the corporation, and failed to procure workers' compensation insurance for the corporation). In other words, Plaintiffs have alleged they are harmed by the alleged shield of the corporate structure. See Ridgeway Brands Manufacturing, 666 S.E.2d at 115 ("[I]t would be inequitable to permit defendants to shelter behind the corporate identity of the very entity they drained in the course of their [unlawful] actions."); but see Best Cartage, 727 S.E.2d at 300-01

33

(noting that a "breach of [contract], in itself, can[not] amount to a wrongdoing to meet the second element of the [instrumentality rule] . . . [as] it does not appear . . . [the individual] created [the corporation] for the sole purpose of entering the [contract]; and it does not appear that the creation of [the corporation] somehow unjustly insulates [an individual] from any liability").

However, at this preliminary pleading stage, it is not apparent that, even if the first two elements of the standard were met, piercing the veil is equitably necessary. That likely depends on whether a class is certified in this case and, if so, its size. Absent certification, it remains to be demonstrated why pursuing additional parties, other than those with whom Plaintiffs directly contracted, would be necessary. Thus, the court will defer ruling on the viability of Plaintiffs' claims predicated on the instrumentality rule pending the resolution of any motion for class certification. For this reason, discovery directed toward the issue of veil piercing has not been shown yet to be necessary and should similarly await the ruling on class certification. Thus, Defendants' motion to dismiss the liability claim against Defendants Salisbury Two NC Propco, LLC; Accordius; Portopiccolo; Simcha Hyman; and Naftali Zanziper (Doc. 1 ¶¶ 254-262 (Count V of complaint)) will be denied without prejudice, and Plaintiffs' motion to amend those same liability claims against those Defendants (Doc. 36-1 ¶¶ 278-288 (Count IV of proposed amended

34

complaint)) will be granted, but only insofar as necessary to allow the parties to work off of a single (amended) complaint. Final resolution of the claim will be held in abeyance pending the resolution of a decision on class certification.[8]

### b. Civil Conspiracy

The proposed amended complaint, like the current complaint, contains allegations of a civil conspiracy as well as a separate claim for relief based on it (Doc. 36-1 ¶¶ 278-88; Doc. 1 ¶¶ 208, 220, 223, 254-62.)

In North Carolina, "there is not a separate civil action for civil conspiracy." Fox v. City of Greensboro, 866 S.E.2d 270, 287 (N.C. Ct. App. 2021) (citation omitted). Rather, a plaintiff can state a claim for "wrongful overt acts" done in furtherance of a conspiracy which caused them harm. Id. (citing Shope v. Boyer, 150 S.E.2d 771, 773-74 (N.C. 1966)); Fox v. Wilson, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987) (noting that once the elements of a civil

---

[8] As to Plaintiffs' contract claims, the complaint names Defendants Salisbury Two NC Propco, LLC; Accordius; Portopiccolo; Hyman; and Zanziper. As the North Carolina Supreme Court has explained, "[t]he general rule is that one who is not a party to a contract may not maintain an action for its breach." Matternes v. City of Winston-Salem, 209 S.E.2d 481, 487 (1974). Plaintiffs do not allege that any Defendant other than The Citadel is a contracting party. (Doc. 1 ¶ 208; Doc. 36-1 .) However, as discussed above, Plaintiffs have alleged liability of other Defendants through the instrumentality rule. For the reasons stated, the court will deny the motion to dismiss the breach of contract claim against the remaining Defendants and will allow amendment as to them but will then hold final resolution of whether Plaintiffs will be permitted to pursue their contract claims against those Defendants in abeyance until class certification is resolved.

conspiracy are established, "all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement" (citing <u>Burton v. Dixon</u>, 131 S.E.2d 27 (N.C. 1963))); <u>Reid v. Holden</u>, 88 S.E.2d 125, 130-31 (N.C. 1955) ("It would seem that, as to a conspirator who committed no overt act resulting in damage, the basis of his liability for the conduct of his co-conspirators bears close resemblance to the basis of liability of a principal under the doctrine of respondeat superior for the torts of his agent."). To state liability based on a civil conspiracy, a plaintiff must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do an lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." <u>Fox</u>, 866 S.E.2d at 287 (citation omitted). A civil conspiracy may be established by circumstantial evidence; "however, 'the evidence of the agreement must be sufficient to create more than a suspicion or conjecture.'" <u>Id.</u> at 287-88 (citing <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 337 (N.C. 1981)).

Here, because the court has found all of Plaintiffs' tort claims to be futile, Plaintiffs' claim for civil conspiracy necessarily fails. Plaintiffs' sole claim is for breach of contract. North Carolina courts have not clearly indicated that they would recognize a breach of contract as a basis for a civil conspiracy claim, because to establish that Defendants engaged in

36

"[a] breach of a contract, nothing else appearing, does not give rise to an action in tort." Firemen's Mutual Insurance Co. v. High Point Sprinkler Co., 146 S.E.2d 53, 60 (N.C. 1966); see also Capps v. Harris, No. 5:18-CV-133-FL, 2018 WL 6172517, at *14 (E.D.N.C. Nov. 26, 2018) ("[A] breach of contract is insufficient to establish [a defendant] engaged in wrongful overt acts." (citing Reid, 88 S.E.2d at 130-31)); cf. Superior Performers, Inc. v. Thornton, No. 1:20-CV-00123, 2021 WL 2156960, at *9 n.10 (M.D.N.C. May 27, 2021) (referring to a N.C. Business Court decision that concluded that it is an "open question in North Carolina as to whether a breach of contract may support a claim for conspiracy." (collecting cases)). As a court sitting in diversity, this court is obliged to follow applicable state law, looking to the law of the highest court of the state, and should not create new law where the state has not indicated an intention to do so. See Moore v. Equitrans, L.P., 27 F.4th 211, 220 (4th Cir. 2022).

Therefore, as Plaintiffs' complaint fails to plausibly allege a civil conspiracy, the amended complaint's civil conspiracy claims are futile as to Defendants Salisbury Two NC Propco, LLC; Accordius; Portopiccolo; Simcha Hyman; and Naftali Zanziper. Thus, Plaintiffs' claims for civil conspiracy in the complaint will be dismissed, and the motion to add those claims in the proposed amended complaint is denied as futile.

### 8. New Claims

Plaintiffs move to amend their complaint to add claims for negligence and equitable relief. (Doc. 37 at 6; Doc. 36-1 ¶¶ 289-297.) Plaintiffs also move to amend to withdraw their claim for breach of fiduciary duty. (Doc. 37 at 6.) Defendants argue that Plaintiffs' new claims are futile because "Plaintiffs have failed to offer the requisite certification and supporting expert affidavits as required by North Carolina Rule of Civil Procedure 9(j)" for medical malpractice claims. (Doc. 39 at 7-8.) Plaintiffs argue that these are not claims of medical negligence; "[r]ather, this case is about corporate failure to budget for required staffing." (Doc. 36-1 ¶ 8; Doc. 43 at 5.)

### a. Negligence

The court need not resolve whether Plaintiffs' negligence claim is best characterized as a medical malpractice claim or one for negligent conduct in understaffing because, for the reasons set forth below, the claim is futile regardless.[9]

---

[9] To the extent the claims sound in medical malpractice, Defendants contend that Plaintiffs have failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure, a prerequisite for a medical negligence claim in state court. See Rule 9(j) (requiring that, prior to the filing of a medical malpractice complaint in North Carolina, a plaintiff must certify that an expert has reviewed the medical malpractice claim and is prepared to testify that the defendant did not meet the standard of care). Courts have previously held that Rule 9(j)'s pre-filing certification requirement is "a substantive requirement in medical malpractice claims." Boula v. United States, No. 1:11-CV-00366, 2013 WL 1343547, at *2 (M.D.N.C. Apr. 2, 2013). But the Fourth Circuit has held both that "a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action,"

North Carolina permits a negligence claim regarding a breach of contract in only four specific circumstances: where the promisor's negligent act in performing the contract caused an injury: (i) "to the person or property of someone other than the promisee," (ii) "to property of the promisee other than the property which was the subject of the contract, <u>or was a personal injury to the promisee</u>," (iii) to the property that was the subject of the contract where the promisor, as a matter of public policy, bore "the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee," or (iv) that qualified as a willful "injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor."   <u>North Carolina State Ports</u>

---

<u>Littlepaige v. United States</u>, 528 F. App'x 289, 292-93 (4th Cir. 2013) (unpublished), and more recently that an analogous state-law pleading requirement did not apply in federal court, <u>Pledger v. Lynch</u>, 5 F.4th 511, 517-24 (4th Cir. 2021) (concluding that Federal Rules of Civil Procedure displace West Virginia's certification requirement and deeming the latter inapplicable to claim under Federal Tort Claims Act). Following <u>Pledger</u>, federal courts in North Carolina have recently rejected Rule 9(j) noncompliance as a basis for dismissing medical malpractice claims under North Carolina law.   <u>See</u> <u>Saylon v. United States</u>, No. 5:20CV176, 2021 WL 3160425, at *3-4 (E.D.N.C. July 26, 2021); <u>Richardson v. Wellpath Health Care</u>, No. 1:20CV777, 2021 WL 5235334, at *7, *11 (M.D.N.C. Nov. 10, 2021) (recommending against dismissal of the plaintiff's medical malpractice case, in part, because <u>Pledger</u> has "rendered Rule 9(j) a nullity in federal court"); <u>Vickers v. United States</u>, No. 1:20-CV-00092-MR-WCM, 2021 WL 5769991, *8-10 (W.D.N.C. Dec. 6, 2021).   Cases involving diversity jurisdiction and supplemental jurisdiction have been held to also be within <u>Pledger</u>'s purview.   <u>See</u> <u>Johnson v. W. Virginia Univ. Bd. of Governors</u>, No. 2:21-CV-00380, 2022 WL 908496, at *13 (S.D.W. Va. Mar. 28, 2022) ("Simply put, the conflict between the pre-suit notice and the Federal Rules of Civil Procedure does not dematerialize in diversity actions. *Pledger* applies just the same." (citation omitted)).

Authority v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350-51 (N.C. 1978), rejected in part on other grounds by Trustees of Rowan Technical College v. J. Hyatt Hammond Associates, Inc., 328 S.E.2d 274, 281 (N.C. 1985) (emphasis added); see Kaleel Builders, Inc. v. Ashby, 587 S.E.2d 470, 476 (N.C. Ct. App. 2003) ("[North Carolina courts] acknowledge no negligence claim where all rights and remedies have been set forth in the contractual relationship. North Carolina case law on this issue is clear and long standing.").

None of those circumstances applies here, as Plaintiffs have expressly disavowed any claim for personal injury. (See Doc 36-1 ¶ 8 ("The Plaintiffs do not at this time bring any claims for . . . personal injury."); Doc. 30 at 2 ("There is no claim . . . for personal injury.").) Therefore, Plaintiffs' claim is best characterized as one for breach of contract, and Plaintiffs' motion to amend to add a claim of negligence will be denied as futile.

### b. Equitable Relief

Plaintiffs' amended complaint also invokes the federal Declaratory Judgment Act, 28 U.S.C. § 2201, to "plead that the Court declare the respective rights and obligations of the parties with regard to the applicable contract provisions alleged herein." (Doc. 36-1 ¶ 297.)

The Declaratory Judgment Act permits a federal court to

40

"declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); United Capitol Insurance Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998) ("The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts 'may declare' the rights of interested parties. This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases."). District courts have "great latitude" in deciding whether to exercise jurisdiction in a declaratory judgment action. See Aetna Casualty & Surety Co. v. Ind-Com Electric Co., 139 F.3d 419, 422 (4th Cir. 1998) (per curiam).

The Fourth Circuit has enumerated several factors that a district court should consider in determining whether to exercise its discretion to entertain a declaratory judgment action. See id. These include whether "the declaratory relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (citation omitted). Furthermore, the district court should consider (3) principles of federalism, efficiency,

comity, and procedural fencing, id. at 423, and (4) whether "allowing [the] case to go forward would produce piecemeal litigation," id. at 424.[10]

After fully considering these factors, the court declines to exercise its discretion here. As to the first two factors, a declaration in this case would not serve a "useful purpose" as, in denying Defendants' motion to dismiss as to the breach of contract claim, the court has already held that either an express or implied-in-fact contract exists between the residents and The Citadel. Additionally, any declaratory judgment would not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." The third and fourth factors are less relevant. There is neither a pending state court proceeding for considerations of federalism or comity nor any indication that one party is engaging in procedural fencing, e.g., a race for *res judicata*, or risk of piecemeal litigation from different courts considering the same issue. See Gannett Co. v. Clark Construction Group, Inc., 286 F.3d 737, 744 (4th Cir. 2002) ("Piecemeal litigation occurs when different tribunals consider

---

[10] Additional factors exist when there are parallel state court proceedings, which are not present here. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376-77 (4th Cir. 1994), abrogated in part on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995). While the lack of a state court proceeding is not dispositive, it remains a "significant factor" in the determination of whether to hear a declaratory judgment action. See Ind-Com, 139 F.3d at 423.

42

the same issue, thereby duplicating efforts and possibly reaching different results." (citation omitted)).

For these reasons, Plaintiffs' motion to amend the complaint to assert a request for declaratory relief will be denied as futile.

### 9. Prejudice

Defendants contend that Plaintiffs' amended complaint should be denied as unduly prejudicial as it was made "after [the] motion to dismiss was filed," Plaintiffs were already aware of their "new" facts prior to filing their initial complaint, and "expanding the class allegations to another facility and then to all North Carolina facilities is being done for no other reason than to prejudicially drive up Defendants' cost of litigati[on]." (Doc. 39 at 15-17.) Plaintiffs do not respond to this argument. (See Doc. 43.)

The timing and changes in Plaintiffs' proposed amended complaint appear to be, at least in part, an attempt to circumvent Defendants' pending motion to dismiss and has complicated the court's resolution of the pending motions. See Googerdy v. North Carolina Agricultural & Technical State University, 386 F. Supp. 2d 618, 624 (M.D.N.C. 2005) (denying a motion to amend as prejudicial when the "proposed amendment" was "brought solely to circumvent Defendant's motion to dismiss." (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Indeed,

43

Plaintiffs filed their motion to amend their complaint a mere fifteen days after the motion to dismiss was fully briefed and sought to add facts they were already aware of to shore up their instrumentality rule allegations, including that "some or all" of the LLCs controlled by Hyman and Zanziper have "no employees" and The Citadel is undercapitalized. (Doc. 36-1 ¶ 226.) Further, this litigation against the Defendants had a prior iteration, until it was voluntarily dismissed on March 18, 2021, following "[e]xtensive discovery"; Plaintiffs filed this litigation two months later. (See Doc 25. at 1-2, 2 n.1; see also Doc. 30 at 5 n.2 ("Plaintiffs are hopeful that the [significant amount of work and] discovery from [the previous litigation] will assist to expedite these proceedings.").)[11] Plaintiffs also made significant changes to their claims, withdrawing their fiduciary duty claim

---

[11] Despite this prior litigation and "extensive" and "significant" discovery, many of Plaintiffs' allegations are based on "information and belief." A complaint's conclusory allegations based solely "upon information and belief" are generally "insufficient to defeat a motion to dismiss." Harman v. Unisys Corp., 356 F. App'x 638, 640-41 (4th Cir. 2009) (unpublished) (citing Twombly, 550 U.S. at 555)); In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig., 756 F.3d 917, 931 (6th Cir. 2014) ("To survive a motion to dismiss, a complaint must plead facts that create a plausible inference of wrongdoing. The mere fact that someone believes something to be true does not create a plausible inference that it is true." (citation omitted)). However, "the *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted); Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc., 892 F.3d 719, 730 (5th Cir. 2018) (same).

44

and adding claims for negligence and a request for a declaratory judgment. (Compare Doc. 1 ¶¶ 207-262 with Doc. 36-1 ¶¶ 237-297.) However, as the court is nevertheless entertaining Defendants' motion to dismiss, Defendants are not unduly prejudiced either by a delay or through the "time and expense of fully briefing a motion to dismiss." See Cash v. Lees-McRae College, Inc., No. 1:18-CV-00052-MR-WCM, 2019 WL 276842, at *3 (W.D.N.C. Jan. 22, 2019), aff'd, 811 F. App'x 190 (4th Cir. 2020) (denying leave to amend for undue prejudice where "allow[ing] the Plaintiffs to amend their Complaint at this stage of the proceedings . . . would not only prejudice the Defendants, who have expended the time and expense of fully briefing a motion to dismiss, but would also encourage dilatory practices on the part of plaintiffs in delaying motions for leave to amend until after they have the benefit of a Magistrate Judge's opinion" (citation omitted)). Additionally, the court has denied expansion of the litigation to include joinder of Ms. Kilgo and Ms. Lee as Plaintiffs, and Myers Park and Myers Park Propco, LLC as Defendants, under Rule 20. On the whole, therefore, consideration of Plaintiffs' motion to amend their complaint does not unduly prejudice Defendants.

**B. Motion to Strike**

Defendants move to strike various allegations in Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(f). (Docs. 28, 29.) Specifically, Defendants move to strike the

45

following: (1) "inflammatory terms" such as "cut-rate medical supplies," "reckless cost-cutting measures," and "upstart [nursing home] chain"; (2) allegations against a non-party, Genesis; (3) allegations "concern[ing] standard of care violations"; and (4) "allegations pertain[ing] to marketing materials." (Doc. 29 4-5.) In response, Plaintiffs argue that "[t]here is nothing inflammatory, scandalous or otherwise strike-able about the allegations in the Complaint."[12] (Doc. 32 at 5-9.) Defendants did not file a reply. (See Doc. 35.)

Federal Rule of Civil Procedure 12(f) authorizes the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Such motions act to prevent the litigation of "unnecessary issues." Simaan, Inc. v. BP Products North America, Inc., 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005). A party moving to strike a defense under Rule 12(f) must make a showing of prejudice. Id. "[T]o survive a motion to strike, a defendant must offer more than a bare-bones conclusory allegation which simply names a legal theory but does not indicate how the theory is connected to the case at hand." Villa v. Ally Financial, Inc., No. 1:13CV953, 2014 WL 800450, at *2 (M.D.N.C. Feb. 28, 2014) (citation omitted). Whether to grant

---

[12] As discussed above, despite this contention, Plaintiffs' amended complaint has removed some of the language Defendants label as "inflammatory."

or deny a motion to strike is discretionary with the district court. <u>United States v. Ancient Coin Collectors Guild</u>, 899 F.3d 295, 324 (4th Cir. 2018); <u>Ferrellgas, L.P. v. Best Choice Products a/k/a Sky Billiards, Inc.</u>, No. 1:16CV259, 2016 WL 4539220, at *2 (M.D.N.C. Aug. 30, 2016).

Here, the dispute over many of the allegations deemed offensive has been resolved by the court's grant of Defendants' motion to dismiss. Even if many of the alleged "inflammatory terms" and facts surrounding Genesis were removed, dismissal of Plaintiffs' breach of contract claim would not be warranted. Additionally, the court has already determined that the allegations in the purported "standard of care violations" may demonstrate breach of contract. <u>See</u> <u>supra</u>. Finally, the "allegations pertain[ing] to marketing materials" are only relevant to Plaintiffs' UDTPA claim, which the court is dismissing. Accordingly, the motion to strike is denied as moot.

**III. CONCLUSION**

For the reasons stated,

IT IS ORDERED that Plaintiffs' motion to amend (Doc. 36) is GRANTED in part and DENIED in part as follows:

The motion is GRANTED as to Resident Plaintiffs' breach of contract claim (Count I) of the proposed amended complaint;

The motion is DENIED as futile as to joinder to add Ms. Kilgo and Ms. Lee as Plaintiffs, and Myers Park and Myers

47

Park Propco, LLC as Defendants, and DENIED as futile as to Counts II (Unfair and Deceptive Trade Practices), III (Negligent Infliction of Severe Emotional Distress), V (Negligence), VI (Equitable Relief), and IV (as to civil conspiracy), against all Defendants, as alleged in the proposed amended complaint; and

The motion is GRANTED as to allegations of liability against all Defendants under the instrumentality rule (Count IV) except that as to this count Plaintiffs will be permitted only to file the amended complaint (deleting reference to civil conspiracy) and discovery on any claim seeking to pierce the corporate structure of any Defendant as well as this court's final determination on whether Count IV can proceed shall be STAYED pending resolution of the determination of class certification.

IT IS FURTHER ORDERED that Defendants' motion to dismiss the complaint (Doc. 24) is GRANTED in part and DENIED in part as follows:

The motion is GRANTED as to Count II (Unfair and Deceptive Trade Practices) and Count IV (Negligent Infliction of Severe Emotional Distress) of the complaint, which claims are DISMISSED against all Defendants;

The motion is DENIED as to Resident Plaintiffs' breach of contract claim (Count I); and DENIED AS MOOT as to Sponsor

48

Plaintiffs' breach of fiduciary duty claim (Count III), which Plaintiffs have withdrawn, and DENIED as to the allegations of liability under the instrumentality rule (Count V), which Plaintiffs have amended and the court has allowed subject to the limitations noted herein.

IT IS FURTHER ORDERED that the motion to stay (Doc. 26) is WITHDRAWN and DENIED AS MOOT;

IT IS FURTHER ORDERED that the motion to strike (Doc. 28) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the prior stay of consideration of Plaintiffs' class certification (Doc. 23) is LIFTED and Plaintiffs shall have 30 days within which to file their updated briefing in support of their motion to certify the class. Defendants' response briefs and Plaintiffs' reply briefs shall be filed as provided in the court's Local Rules.

                                    /s/    Thomas D. Schroeder
                                    United States District Judge

May 25, 2022